counter-claim, it will be treated as a defense merely, and defendant cannot avail himself of Code Civil Proc. N. Y. § 3068, authorizing a new trial in the county court, "where the amount of the judgment demanded by either party exceeds $50."

Appeal from St. Lawrence county court.

Action by Leslie S. Royce against Chauncey C. Gibbons for wages. Plaintiff appeals from an order of the county court denying his motion to transfer this cause from the trial calendar to the law calendar of that court. The order denying the motion recites "that the cause is a proper one for trial in the county court, and that said cause remain upon that calendar for that purpose until regularly disposed of."

Argued before LEARNED, P. J., and LANDON and INGALLS, JJ.

*John C. Keeler,* for appellant.   *H. D. Ellsworth,* for respondent.

LANDON, J. The action was tried in a justice's court. The return of the justice states: "Plaintiff complained orally for work and labor performed for defendant, balance due him, $32.85, for which plaintiff demanded judgment and costs." Defendant answered in writing as follows: "Defendant denies complaint; defendant· alleges that plaintiff hired for 7 months at $23 per month; worked but three, and quit without cause, and without leave of defendant; that defendant was obliged to hire another man in place of plaintiff, at an increased price of $16 per month; that defendant was damaged, in consequence of plaintiff's leaving him, in the sum of $64." It will be seen that the answer makes no demand for judgment. The plaintiff recovered $22.33 and costs. Section 3068, Code Civil Proc., provides that a new trial may be had in the county court "where the amount of the judgment demanded by either party in his pleading exceeds fifty dollars." The defendant might have demanded judgment exceeding $50, or he might have demanded that the damages established by him be set off against any amount which the plaintiff might establish, and that he have judgment for the balance, or he might allow his claim to remain as a defense to the plaintiff's demand. *Green* v. *Waite,* 33 Hun, 191, holds, in a case more nearly like this than any other cited, that where matter which may constitute either a counter-claim or a defense is pleaded as a defense, without designating it either as a defense or a counter-claim, it will be treated as a defense merely. We think the rule a sensible one in cases of appeal from a justice's court to the county court. The answer is equivocal upon the question presented. If the defendant had defeated the plaintiff's recovery in the justice's court, he could upon this answer, plausibly and probably successfully, insist that he had demanded no judgment at all. It is not asking too much to require him by his answer to take a definite position early enough to give his adversary the same right to a new trial in case of defeat that he now claims for himself in the like case. The order should be reversed, with $10 costs and printing disbursements, and the motion granted.

LEARNED, P. J., and INGALLS, J., concur.

---

## *In re* SMITH *et al.*

(*Supreme Court, Special Term, New York County.* November 2, 1888.)

ELECTIONS AND VOTERS—CONDUCT OF ELECTIONS—CONSTITUTIONAL LAW.

    The fact that the provision of the election law, that the polls shall close at 4 o'clock, may prevent qualified electors from voting, does not render the provision void, as in conflict with that section of the constitution guarantying to every citizen possessed of the requisite qualifications the right to vote, and is not ground for *mandamus* to the inspectors of election to extend the time for closing so as to enable electors, present and ready to vote at the time of closing, to cast their votes.

At chambers. Application by Nelson J. Smith, Alfred Steckler, Louis E. Waehner, John G. H. Meyers, Alexander Thain, Joseph J. Marrin, Leicester

Holme, and Peter Mitchell, a special committee appointed by Tammany Hall, for a *mandamus* to the inspectors of the Thirty-Second election district of the Twenty-Second assembly district of New York city, to receive the votes of all registered voters who should be at the polls, and ready to vote, on·the coming election day.

    *Cochran & Clark*, for the application.      *George Bliss, contra.*

    BARRETT, J. In view of the importance of this matter, and the fact that the election is to occur at an early day, I think the question should be disposed of now. I do not wish, however, to be understood as treating it lightly. On the contrary, it has received thoughtful and solicitous consideration, not only from me, but from all the judges of the court who were accessible. We have examined the statutes and the authorities, knowing that it was a matter of grave public interest, to the end that we might be well prepared for any discussion which might arise. I have listened attentively to the views of counsel, but nothing has been suggested which renders it necessary to defer our judgment, or which calls for further consultation and consideration. I entirely agree with the gentlemen who appear for the relators, 'that the constitution guaranties to every citizen possessed of the requisite qualifications the right to vote at a general election. At the same time that right cannot be practically enjoyed, except through the instrumentality of legislation. In other words, if the legislature had provided no machinery for the exercise of the right, it could not be enjoyed; for there is no provision in the constitution for such machinery. The latter devolves upon the legislature. Express provision is made in the constitution for such legislation. The legislature is therein required "to pass general laws for the opening and conduction of elections, and the designating of places for voting.". Thus the enjoyment of the undoubted right which the citizen possesses practically depends upon the performance by the legislature of its constitutional duty. There is, however, no suggestion that the legislature has not performed that duty, and performed it fairly; no intimation that its course has been revolutionary in the sense of disregarding the constitutional mandate. The law under consideration has been in force for many years. So far it has worked well, and has proved adequate for the citizens' constitutional guaranty. The present complaint is that the law may be found to be in some respects inadequate at the coming election, owing to unusual and extraordinary conditions; that thus it has become *pro tanto* unconstitutional. That is a proposition which cannot for a moment be sustained. But if it were to be treated as unconstitutional, upon the happening of the particular event, and solely because of, and with relation to, such happening, what then? The proposition is substantially advanced that the court shall remedy the then inadequate legislation, and see that the constitutional guaranty is afforded the citizen by extending the hour of closing provided by the legislature to a later hour to be specified by the court, and suitably flexible to meet all possible exigencies. It is plain that that would be usurpation of the legislative power. That body alone can, under the constitution, regulate the time for the opening and closing of the polls. If there was no election law at all, the court could not direct that ballot boxes be placed at some convenient locality, or otherwise execute the constitutional guaranty by providing (through *mandamus* against local officers) adequate machinery. If the legislature, in the exercise of its exclusive power under the constitution, makes inadequate provision, that is a matter for which legislators, and legislators alone, must be held responsible at the bar of public opinion, just as other public servants who neglect their sworn duties are held responsible. Passing from the constitutional view of the subject, let us look at the act itself. The question is not whether, in case the polls be kept open, and votes are polled after 4 o'clock, the election is void. The real question is whether we shall direct (by *mandamus*) the inspectors to do what the legislature has said that

they shall not do. It is immaterial for the solution of so plain a question whether the act is directory or mandatory. We would no more require the inspectors to violate a directory law than a mandatory law. It is, however, my clear opinion, and also the opinion of at least four of my brethren, that the act is mandatory.

In the case of *People* v. *Cook*, 8 N. Y. 92, the statute there under consideration required the poll to be opened at sunrise, and to be kept open until the setting of the sun. The only mandate there was that it should be kept open until the setting of the sun, not that it should be closed then. The learned judge (WILLARD, J.) says: "The statute contains no words forbidding the poll to be held open after sundown." Here, however, our statute expressly provides that the polls shall be opened at 6 in the morning, and closed at 4 in the afternoon. This is an express mandate, and it is impossible for any candid mind to examine the context without seeing that such mandate was the plain intention of the legislature. The act had a double purpose. It looks,—*first*, to a fair polling of the vote, and, *second*, to a fair canvass of the vote polled. One is deemed as important a function as the other, and the time is regulated with a view to both. From 6 to 4 the polling is to proceed. At 4 it is to stop, and the great work of canvassing is forthwith to proceed. To the latter the remainder of the day is given. If we shall attempt to alter one part of the working of the act, we alter the entire homogeneous system, and frustrate the legislative purpose. The law and its working would thus be deprived of its harmony, its vigor, and its vitality as a system. It is perfectly clear to my mind that the closing of the poll means, not the closing of the polling place, but of the polling of votes. Several considerations make this entirely certain. In the first place, the polling place cannot be meant, because the law declares (section 1835) that the polling place shall never be closed. There must be egress and ingress at the open door at all times, from 6 in the morning until the completion of the canvass. Again, section 1832 provides that in each election district it shall be the duty of the inspectors "to immediately after the closing of the polls on the day of any election, before proceeding with the canvass  *  *  *  to write in ink, opposite to and against the name of persons who have not voted, the word 'No.'" Thus the close of the polls must mean the close of the polling of votes, for it is then, and then immediately, that the inspectors must make their entry of the word "No" against the names of those who have not voted. Still further, we find that immediately after the closing of the poll (section 1835) the canvass shall commence, and "such canvass shall not be adjourned or postponed until it shall have been fully completed." For a willful neglect of any of these duties, the legislature had provided that the inspectors shall be adjudged guilty of a felony, and punished by imprisonment for not less than one nor more than five years. Section 1909. Of course, therefore, we cannot direct the inspectors to neglect the plain duty of closing the polls at 4, registering immediately by the entry "No" those who have not voted at that hour, and proceeding forthwith to canvass. The only question of serious moment is that so ably discussed by Mr. Mitchell. I concede its gravity. It is a very grave suggestion that, under the working of a law which has so far proved adequate, a citizen may possibly be deprived of his constitutional right to vote. Such a catastrophe should be averted by every possible effort. If a law of this kind is unconstitutional in whole or in part, we can so declare, but we cannot put another law in its place. As I said before, the legislature must be appealed to to do its full duty by the people; and, if the wrong which the relators suspect should be done, subsequent legislation will doubtless render it exceptional and impossible of repetition. There is something worse even than the possibility of a citizen losing his vote, and that is the prevention of that wrong by judicial usurpation, or by the action of ministerial officers in evading the law as it is plainly written, and as it was also plainly intended to be understood.

There is also the danger of vitiating the election. Even in *People* v. *Cook*, *supra*, where, as we have seen, the law was directory, WILLARD, J., said: "I do not intend to assert that there may not be departures from the statutory requirement with respect to the time of opening and closing the polls which would put in hazard the whole vote of the district." Patriotism requires that no such question should be given even the semblance of life. No matter how much present excitement and interest may stir the public, the learned counsel for the relators are entirely right in asking our calm judgment. That judgment is that the inspectors cannot be too guarded in following the law as we have interpreted it, both for their own safety and honor, but also, in truth, for the public good. The motion must be denied.